

# MEMORANDUM OF UNDERSTANDING
# DISTRICT FUGITIVE TASK FORCE (DTF)
# SOUTHERN OHIO FUGITIVE APPRENSION STRIKE TEAM
# (SOFAST)

This Memorandum of Understanding (MOU) is entered into by the Franklin County (OH) Sheriff's Office and the United States Marshals Service (USMS) pursuant to the Presidential Threat Protection Act of 2000 (Public L. 106-544, § 6, December 19, 2000, 114 Stat. 2718, 28 U.S.C. § 566 note). The Presidential Threat Protection Act of 2000 provides that, "the Attorney General shall, upon consultation with appropriate Department of Justice and Department of the Treasury law enforcement components, establish permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities in designated regions of the United States, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives."

## Terms and Conditions

**1. Period of Performance:** This MOU may be renewed annually based on written notification from the USMS, on or about October 1 of each new fiscal year. Participating agencies may withdraw their participation after providing 30 days advance written notice to the Chief Deputy or Task Force Coordinator. Subject to the availability of funds, this MOU will be renewed annually based on written notification from the U.S. Marshals Service.

**2. Overtime Reimbursement:** The USMS shall reimburse your organization for overtime hours. If overtime is compensated, the agency must submit within 30 days after receipt a fully executed MOU. Reimbursement of overtime work shall be consistent with the Fair Labor Standards Act. Overtime per law enforcement officer is capped at no more than $15,572 per year.

Reimbursement of overtime shall be contingent upon the submission of a proper invoice which shall be submitted on a quarterly fiscal year basis, and which provides the names of the investigators who incurred overtime for the District Fugitive Task Force during the quarter; the number of overtime hours incurred; the hourly regular and overtime rates in effect for each investigator, and the total quarterly cost. The invoice should be submitted to the USMS Chief Deputy or District Fugitive Task Force Coordinator, who will review the invoice, stamp and sign indicating that services were received and that the invoice is approved for payment.

Group supervisors are responsible for scheduling the duty hours of the personnel assigned to their group, subject to the supervision of the Task Force Coordinator and the availability of overtime compensation.

Agencies within the District may join the task force at any time with the consent of the USMS and after consultation with the Task Force Advisory Committee. Agencies that wish to join will sign a copy of the existing MOU for the District.

3. **Personnel and Supervision**: The DTF will consist of law enforcement and administrative personnel from federal, state, and local law enforcement agencies. Each participating agency may agree to assign at least one full-time law enforcement officer to the task force. Other law enforcement officers may assist with task force operations as necessary.

Direction and coordination of the DTF shall be the responsibility of the USMS Task Force Chief. Subject to the needs of the DTF, participating agencies may assign supervisory personnel to serve as group supervisors within the task force. Each group supervisor will be responsible for the operational supervision of a multi-agency group of federal, state, and local law enforcement officers assigned to the task force. The current task force, if applicable, will be integrated within the DTF to formulate a joint task force with a greater scope of responsibility and wider area of coverage

Administrative matters which are internal to the participating agencies remain the responsibility of the respective agencies. Furthermore, each agency retains responsibility for the conduct of its personnel

4. **Task Force Advisory Committee**: A Task Force Advisory Committee, consisting of representatives of each participating agency, shall meet and confer as necessary to review and address issues concerning the DTF.

5. **Vehicles and Equipment**: Any vehicles, equipment, credentials, or other items issued to task force personnel by the USMS shall remain the property of the USMS at all times. Government vehicles shall be used only for official purposes and solely for use in the performance of the task force. They shall not be used for transportation between residence and place of employment. All vehicles and equipment must be returned to the USMS upon termination of the task force or the departure of any task force personnel.

Any other equipment used by or assigned to task force officers will remain the property of the agency issuing the equipment and will be returned to that specific agency upon termination of the task force or upon agency request.

Pending the availability of funding, each participating agency agrees to furnish one vehicle for use by the task force for each law enforcement officer assigned to the task force (unless a USMS owned or leased vehicle is assigned to the officer). Each agency is responsible for the fuel, maintenance and other expenses associated with the use of its vehicles. Pending the availability of funds and equipment, the USMS will issue USMS radios to each task force officer. Each participating agency agrees to provide mobile and/or handheld radio equipment capable of communicating on their law enforcement radio network. Pending the availability of funds, the USMS will furnish cellular telephones to be used for official DTF business.

6. **Background Investigations and Special Deputation**: Personnel assigned to the task force may be required to undergo background investigations in order to be provided access to USMS offices, records, and computer systems. In the event that such background investigations are required by the USMS for state or local personnel, the USMS shall bear the costs associated with

2

those investigations. Non-USMS law enforcement officers assigned the task force will be deputized as Special Deputy U.S. Marshals.

7. **Records, Reports, and Evidence**: Original reports of investigation, evidence, and other investigative materials generated, seized, or collected by the DTF shall be retained by the agency in the DTF responsible for the case. However, evidence may be turned over to other law enforcement agencies as appropriate. Copies of investigative reports and other materials may be provided to other agencies in accordance with applicable laws, rules, and regulations. Task force statistics will be maintained in the USMS Warrant Information Network (WIN). Statistics will be made available to any participating agency upon request.

8. **Referral and Assignment of Cases**: Each participating agency agrees to refer cases for investigation by the DTF. Upon receipt of a written request, the DTF may also assist non-participating law enforcement agencies in locating and arresting their dangerous fugitives. Task force personnel will be assigned federal, state, and local fugitive case for investigation. Investigative teams will consist of personnel from different agencies whenever possible. Each participating agency retains responsibility for the cases they refer to the DTF.

9. **NCIC Entries**: Federal fugitive cases referred to the task force for investigation by any participating agency will be entered into the National Crime Information Center (NCIC) by the USMS or originating agency, as appropriate. State or local fugitive cases will be entered into NCIC (and other applicable state or local lookout systems) as appropriate by the concerned state or local agency.

10. **Travel**: Task force personnel may be required to travel outside of the jurisdiction to which they are normally assigned in furtherance of task force business. State or local task force officers traveling on official business at the direction of the USMS shall be reimbursed directly by the USMS for their travel expenses in accordance with applicable federal laws, rules, and regulations.

11. **Informants**: Pending availability of funds, the USMS may provide funding for the payment of informants. However, all payments of informants utilizing USMS funding shall comply with USMS policies and procedures concerning confidential informants and protected sources.

12. **Use of Firearms and Deadly Force**: All members of the DTF shall comply with their agency's guidelines concerning the use of firearms and deadly force. Copies of all applicable firearms and deadly force policies shall be provided to the Task Force Chief and each concerned task force officer.

13. **News Media**: Press conferences, press releases, and other statements to the media concerning task force arrests and operations shall be coordinated among all participating agencies.

**14. Release of Liability**: Each agency shall be responsible for the acts or omissions of its personnel. Participating agencies or officers shall not be considered as the agent of any other participating agency. Nothing herein is intended to waive or limit sovereign immunity under federal or state statutory or constitutional law.

AGREED TO THIS 17th DAY OF SEPTEMBER, 2007

_____ 10-3-07
James A. Karnes
Sheriff
Franklin County Sheriff's Office


_____
James M. Wahlrab
United States Marshal
Southern District of Ohio
United States Marshals Service

Exhibit B

PUBLIC LAW 106–544—DEC. 19, 2000          114 STAT. 2715

Public Law 106–544
106th Congress

## An Act

To amend section 879 of title 18, United States Code, to provide clearer coverage over threats against former Presidents and members of their families, and for other purposes.

Dec. 19, 2000
[H.R. 3048]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Presidential Threat Protection Act of 2000.
18 USC 871 note.

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Presidential Threat Protection Act of 2000".

**SEC. 2. REVISION OF SECTION 879 OF TITLE 18, UNITED STATES CODE.**

(a) IN GENERAL.—Section 879 of title 18, United States Code, is amended—

   (1) by striking "or" at the end of subsection (a)(2);
   (2) in subsection (a)(3)—
       (A) by striking "the spouse" and inserting "a member of the immediate family"; and
       (B) by inserting "or" after the semicolon at the end;
   (3) by inserting after subsection (a)(3) the following:
   "(4) a person protected by the Secret Service under section 3056(a)(6);";
   (4) in subsection (a)—
       (A) by striking "who is protected by the Secret Service as provided by law,"; and
       (B) by striking "three years" and inserting "5 years"; and
   (5) in subsection (b)(1)(B)—
       (A) by inserting "and (a)(3)" after "subsection (a)(2)"; and
       (B) by striking "or Vice President-elect" and inserting "Vice President-elect, or major candidate for the office of President or Vice President".

(b) CONFORMING AMENDMENTS.—

   (1) HEADING.—The heading for section 879 of title 18, United States Code, is amended by striking "protected by the Secret Service".
   (2) TABLE OF SECTIONS.—The item relating to section 879 in the table of sections at the beginning of chapter 41 of title 18, United States Code, is amended by striking "protected by the Secret Service".

114 STAT. 2716  PUBLIC LAW 106–544—DEC. 19, 2000

Exhibit B

### SEC. 3. CLARIFICATION OF SECRET SERVICE AUTHORITY FOR SECURITY OPERATIONS AT EVENTS AND GATHERINGS OF NATIONAL SIGNIFICANCE.

Section 3056 of title 18, United States Code, is amended by adding at the end the following:

*President.*

"(e)(1) When directed by the President, the United States Secret Service is authorized to participate, under the direction of the Secretary of the Treasury, in the planning, coordination, and implementation of security operations at special events of national significance, as determined by the President.

"(2) At the end of each fiscal year, the President through such agency or office as the President may designate, shall report to the Congress—

"(A) what events, if any, were designated special events of national significance for security purposes under paragraph (1); and

"(B) the criteria and information used in making each designation.".

*18 USC 3056 note.*

### SEC. 4. NATIONAL THREAT ASSESSMENT CENTER.

(a) ESTABLISHMENT.—The United States Secret Service (hereafter in this section referred to as the "Service"), at the direction of the Secretary of the Treasury, may establish the National Threat Assessment Center (hereafter in this section referred to as the "Center") as a unit within the Service.

(b) FUNCTIONS.—The Service may provide the following to Federal, State, and local law enforcement agencies through the Center:

(1) Training in the area of threat assessment.

(2) Consultation on complex threat assessment cases or plans.

(3) Research on threat assessment and the prevention of targeted violence.

(4) Facilitation of information sharing among all such agencies with protective or public safety responsibilities.

(5) Programs to promote the standardization of Federal, State, and local threat assessments and investigations involving threats.

(6) Any other activities the Secretary determines are necessary to implement a comprehensive threat assessment capability.

*Deadline.*

(c) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Service shall submit a report to the Committees on the Judiciary of the Senate and the House of Representatives detailing the manner in which the Center will operate.

### SEC. 5. ADMINISTRATIVE SUBPOENAS WITH REGARD TO PROTECTIVE INTELLIGENCE FUNCTIONS OF THE SECRET SERVICE.

(a) IN GENERAL.—Section 3486(a) of title 18, United States Code, is amended—

(1) so that paragraph (1) reads as follows: "(1)(A) In any investigation of—

"(i)(I) a Federal health care offense; or (II) a Federal offense involving the sexual exploitation or abuse of children, the Attorney General; or

"(ii) an offense under section 871 or 879, or a threat against a person protected by the United States Secret Service under paragraph (5) or (6) of section 3056, if the Director of the

Exhibit B

Secret Service determines that the threat constituting the offense or the threat against the person protected is imminent, the Secretary of the Treasury,
may issue in writing and cause to be served a subpoena requiring the production and testimony described in subparagraph (B).

"(B) Except as provided in subparagraph (C), a subpoena issued under subparagraph (A) may require—

"(i) the production of any records or other things relevant to the investigation; and

"(ii) testimony by the custodian of the things required to be produced concerning the production and authenticity of those things.

"(C) A subpoena issued under subparagraph (A) with respect to a provider of electronic communication service or remote computing service, in an investigation of a Federal offense involving the sexual exploitation or abuse of children shall not extend beyond—

"(i) requiring that provider to disclose the name, address, local and long distance telephone toll billing records, telephone number or other subscriber number or identity, and length of service of a subscriber to or customer of such service and the types of services the subscriber or customer utilized, which may be relevant to an authorized law enforcement inquiry; or

"(ii) requiring a custodian of the records of that provider to give testimony concerning the production and authentication of such records or information.

"(D) As used in this paragraph, the term 'Federal offense involving the sexual exploitation or abuse of children' means an offense under section 1201, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423, in which the victim is an individual who has not attained the age of 18 years.";

(2) in paragraph (3)—

(A) by inserting "relating to a Federal health care offense" after "production of records"; and

(B) by adding at the end the following: "The production of things in any other case may be required from any place within the United States or subject to the laws or jurisdiction of the United States."; and

(3) by adding at the end the following:

"(5) At any time before the return date specified in the summons, the person or entity summoned may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the summons, or a prohibition of disclosure ordered by a court under paragraph (6).

"(6)(A) A United State district court for the district in which the summons is or will be served, upon application of the United States, may issue an ex parte order that no person or entity disclose to any other person or entity (other than to an attorney in order to obtain legal advice) the existence of such summons for a period of up to 90 days.

"(B) Such order may be issued on a showing that the things being sought may be relevant to the investigation and there is reason to believe that such disclosure may result in—

"(i) endangerment to the life or physical safety of any person;

Exhibit B

114 STAT. 2718     PUBLIC LAW 106–544—DEC. 19, 2000

"(ii) flight to avoid prosecution;
"(iii) destruction of or tampering with evidence; or
"(iv) intimidation of potential witnesses.

"(C) An order under this paragraph may be renewed for additional periods of up to 90 days upon a showing that the circumstances described in subparagraph (B) continue to exist.

"(7) A summons issued under this section shall not require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States.

"(8) If no case or proceeding arises from the production of records or other things pursuant to this section within a reasonable time after those records or things are produced, the agency to which those records or things were delivered shall, upon written demand made by the person producing those records or things, return them to that person, except where the production required was only of copies rather than originals.

"(9) A subpoena issued under paragraph (1)(A)(i)(II) or (1)(A)(ii) may require production as soon as possible, but in no event less than 24 hours after service of the subpoena.

"(10) As soon as practicable following the issuance of a subpoena under paragraph (1)(A)(ii), the Secretary of the Treasury shall notify the Attorney General of its issuance.".

(b) CONFORMING AMENDMENTS.—
(1) SECTION HEADING.—The heading for section 3486 of title 18, United States Code, is amended by striking:

**"in Federal health care investigations".**

(2) TABLE OF SECTIONS.—The item relating to section 3486 in the table of sections at the beginning of chapter 223 of title 18, United States Code, is amended by striking:

"in Federal health care investigations".

(3) CONFORMING REPEAL.—Section 3486A, and the item relating to that section in the table of sections at the beginning of chapter 223, of title 18, United States Code, are repealed.

(c) TECHNICAL AMENDMENT.—Section 3486 of title 18, United States Code, is amended—
(1) in subsection (a)(4), by striking "summoned" and inserting "subpoenaed"; and
(2) in subsection (d), by striking "summons" each place it appears and inserting "subpoena".

28 USC 566 note.  **SEC. 6. FUGITIVE APPREHENSION TASK FORCES.**

(a) IN GENERAL.—The Attorney General shall, upon consultation with appropriate Department of Justice and Department of the Treasury law enforcement components, establish permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities in designated regions of the United States, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives.

(b) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to the Attorney General for the United States Marshals Service to carry out the provisions of this section $30,000,000 for the fiscal year 2001, $5,000,000 for fiscal year 2002, and $5,000,000 for fiscal year 2003.

Exhibit B

(c) OTHER EXISTING APPLICABLE LAW.—Nothing in this section shall be construed to limit any existing authority under any other provision of Federal or State law for law enforcement agencies to locate or apprehend fugitives through task forces or any other means.

### SEC. 7. STUDY AND REPORTS ON ADMINISTRATIVE SUBPOENAS.

5 USC 551 note.

(a) STUDY ON USE OF ADMINISTRATIVE SUBPOENAS.—Not later than December 31, 2001, the Attorney General, in consultation with the Secretary of the Treasury, shall complete a study on the use of administrative subpoena power by executive branch agencies or entities and shall report the findings to the Committees on the Judiciary of the Senate and the House of Representatives. Such report shall include—

Deadline.

   (1) a description of the sources of administrative subpoena power and the scope of such subpoena power within executive branch agencies;
   (2) a description of applicable subpoena enforcement mechanisms;
   (3) a description of any notification provisions and any other provisions relating to safeguarding privacy interests;
   (4) a description of the standards governing the issuance of administrative subpoenas; and
   (5) recommendations from the Attorney General regarding necessary steps to ensure that administrative subpoena power is used and enforced consistently and fairly by executive branch agencies.

(b) REPORT ON FREQUENCY OF USE OF ADMINISTRATIVE SUBPOENAS.—
   (1) IN GENERAL.—The Attorney General and the Secretary of the Treasury shall report in January of each year to the Committees on the Judiciary of the Senate and the House of Representatives on the number of administrative subpoenas issued by them under this section and the identity of the agency or component of the Department of Justice or the Department of the Treasury issuing the subpoena and imposing the charges.

**Exhibit B**

(2) EXPIRATION.—The reporting requirement of this subsection shall terminate in 3 years after the date of the enactment of this section.

Approved December 19, 2000.

---

LEGISLATIVE HISTORY—H.R. 3048:

HOUSE REPORTS: No. 106–669 (Comm. on the Judiciary).
CONGRESSIONAL RECORD, Vol. 146 (2000):
    June 26, considered and passed House.
    Oct. 13, considered and passed Senate, amended.
    Oct. 25, House disagreed to and concurred in certain Senate amendments, in another with an amendment.
    Dec. 6, Senate receded from certain amendments and concurred in House amendment.

○

Franklin County Ohio Clerk of Courts of the Common Pleas- 2021 Dec 02 8:04 AM-21CR005052

Exhibit C

The State of Ohio,  } SS.
Franklin County

INDICTMENT FOR: Murder (ORC 2903.02) (UF) (1 Count); Murder (ORC 2903.02) (UF) (1 Count); Reckless Homicide (ORC 2903.041) (F3) (1 Count). Total: 3 Counts.

Grand Jury Term
Beginning September 10, 2021

| | |
|---|---|
| Count One | Murder, §2903.02, UF |
| Defendants | Michael Jason Meade |
| Date of Offense | On or about December 4, 2020 |

The Jurors of the Grand Jury of the State of Ohio, duly selected, impaneled, sworn and charged to inquire of crimes and offenses committed within the body of Franklin County, in the State of Ohio, upon their oath do find and present that Michael Jason Meade late of said County, on or about December 4, 2020, within the County of Franklin aforesaid, in violation of section 2903.02 of the Ohio Revised Code, did purposely cause the death of Casey Christopher Goodson, Jr..

| | |
|---|---|
| Count Two | Murder, §2903.02, UF |
| Defendants | Michael Jason Meade |
| Date of Offense | On or about December 4, 2020 |

The Jurors of the Grand Jury of the State of Ohio, duly selected, impaneled, sworn and charged to inquire of crimes and offenses committed within the body of Franklin County, in the State of Ohio, upon their oath do find and present that Michael Jason Meade late of said County, on or about December 4, 2020, within the County of Franklin aforesaid, in violation of section 2903.02 of the Ohio Revised Code, did cause the death of Casey Christopher Goodson, Jr., as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, to wit: Felonious Assault, in violation of Section 2903.11(A)(1) of the Ohio Revised Code.

| | |
|---|---|
| Count Three | Reckless Homicide, §2903.041, F3 |
| Defendants | Michael Jason Meade |
| Date of Offense | On or about December 4, 2020 |

The Jurors of the Grand Jury of the State of Ohio, duly selected, impaneled, sworn and charged to inquire of crimes and offenses committed within the body of Franklin County, in the State of Ohio, upon their oath do find and present that Michael Jason Meade late of said County, on or about December 4, 2020, within the County of Franklin aforesaid, in violation of section 2903.041 of the Ohio Revised Code, did recklessly cause the death of Casey Christopher Goodson, Jr..

Exhibit C

All of the above conduct being contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Ohio.

G. Gary Tyack
Prosecuting Attorney
Franklin County, Ohio

A TRUE BILL

H. Tim Merkle
Special Prosecutor for G. Gary Tyack
522 N. State St., Suite A
Westerville, OH 43082

Gary S. Shroyer
Special Prosecutor for G. Gary Tyack
580 S. high Street, Suite 300
Columbus, OH 43215

Foreperson, Grand Jury