IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff, | : | |
| | : | CASE NO. 2:21-CV-5587 |
| vs. | : | |
| | | JUDGE SARGUS |
| MICHAEL JASON MEADE, | : | MAGISTRATE JUDGE VASCURA |
| Defendant. | : | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY REMAND**

On December 3, 2021, Defendant Michael Jason Meade filed a verified notice of removal (R. #1, Notice of Removal) and four days later, the State of Ohio filed a motion for summary remand (R. #5, Motion for Summary Remand). Now comes Michael Jason Meade with his response in opposition to the State's motion.

To determine if summary remand is appropriate, this Court looks at the face of the notice of removal, along with its exhibits. 28 U.S.C. § 1455(4). To qualify for removal, Meade must: (1) show his conduct concerned actions taken as a federal officer; (2) show his state court prosecution is for conduct occurring under "color of office;'" and (3) "raise a colorable federal defense."

The State of Ohio contends Meade's notice is deficient because he didn't establish he was acting as a federal officer when Casey Goodson was shot. Additionally, the State contends Meade's actions did not occur under the color of his office as a SOFAST member. The State's motion is predicated on claims that Meade was only authorized to apprehend fugitives as a SOFAST member, Meade only observed Goodson commit violations of Ohio law, and after SOFAST was unable to execute an arrest warrant for Kendale Barbour, Meade was no longer a federal officer. (R. #5, Motion for Summary Remand, PAGE ID #37-8).

1

However, the operative statute and jurisprudence doesn't cabin the authority of a Special Deputy United States Marshal as the State would either like or argue. Instead, the applicable law teaches that a Special Deputy United States Marshal has the same authority of a sheriff in Ohio to both investigate and make arrests. Additionally, contrary to the State's argument, the fact Meade witnessed a state crime is not determinative if he was acting under color of law or in his capacity as a federal officer. Finally, contrary to the State's contention, on December 4, 2020, after Barbour was not located, Meade was directed by the Deputy Marshal in charge of the task force to return to SOFAST headquarters, he obeyed this directive, and was driving his United States Marshal Service (USMS) issued vehicle when he witnessed Goodson violating Ohio law. Consequently, Meade's role as a federal officer hadn't ended when he witnessed Goodson's criminal activity and he was authorized to purse his investigation as a federal officer.

### (A) Michael Jason Meade Was A Federal Officer When He Witnessed Casey Goodson Violating Ohio Law.

When Meade became a SOFAST member in 2017, he was deputized as a Special Deputy United States Marshal. (R. #1, Notice of Removal, PAGE ID #18). Moreover, SOFAST membership was Meade's fulltime assignment unless he was needed for SWAT duty by the Franklin County Sheriff.

Courts have consistently treated local law-enforcement agents deputized as federal agents and acting as part of a federal task force as federal officers. *United States v. Martin*, 163 F.3d 1212, 1214-15 (10th Cir. 1998) (local police detective deputized to participate in federal narcotics investigation is a federal officer); *United States v. Diamond*, 53 F.3d 249, 251-52 (9th Cir. 1995) ("A Special Deputy Marshal is a federal officer regardless of whether the conduct he was investigating turned out to be a state or federal offense or none at all."); and *Amoakohene v. Bobko*, 792 F. Supp. 605, 607-08 (N.D. Ill. 1992) (arrestee barred from bringing § 1983 action against

DEA task-force members, including deputized local law enforcement officers, because task-force members were acting as federal agents, not state actors, even though he was arrested for municipal charges).

As a SOFAST member, Meade was regularly trained by the USMS. Meade was also issued tactical gear by the USMS including a vest clearly designating him as "U.S. Marshal" and as a member of the "U.S. Marshals Fugitive Task Force." Meade was wearing this vest and he identified himself as a "U.S. Marshal" when Goodson was shot on December 4, 2020.

Additionally in his capacity as a SOFAST member, the USMS issued Meade an unmarked pickup truck. The Memorandum of Understanding (MOU) attached to Meade's notice of removal and labeled as Exhibit A, indicates this vehicle "shall be used only for official purposes and solely for use in performance of the task force." (R. #1, Notice of Removal, PAGE ID #17).

Meade drove this vehicle to Kendale Barbour's mother's house to serve a state court arrest warrant on December 4, 2020. When Barbour wasn't located, Deputy United States Marshal Youngless directed SOFAST members to return to headquarters. Meade followed this directive and was driving his vehicle to headquarters when he witnessed Casey Goodson violating Ohio law. Deputy Youngless' directive to return to headquarters and Meade's compliance, demonstrates Meade was using his vehicle both for "official purposes" and in the performance of his role as a federal officer on the task force when Goodson was encountered. Consequently, Meade was still a federal officer as he was returning to SOFAST headquarters.

**(B) As A Federal Officer, Meade Was Authorized To Investigate And Arrest Goodson For Violating Ohio Law.**

While returning to headquarters, Meade observed Goodson brandishing a weapon in his car and pointing it at other motorists, including Meade. These actions were in violation of state law, so Meade radioed his observations to fellow SOFAST members on a USMS radio frequency.

3

Under the MOU, the USMS furnished this radio which had a frequency that only SOFAST members could access and use. (R. #1, Notice of Removal, PAGE ID #17).

After viewing Goodson's conduct, Meade's intention was to interview and possibly arrest Goodson for his provocative handling of his firearm in his car. After Meade radioed his observations, it is believed that Deputy Youngless, on the USMS radio frequency, requested Meade's location, which was provided. Meade was never instructed to not pursue Goodson. In fact, under the circumstances, to turn a blind eye to Goodson's behavior, as the State of Ohio claims Meade was obligated to do, "might reasonably have been regarded as *not* doing 'what [an] officer ought to do because of being an officer.'" *United States v. Kelley,* 850 F.2d 212, 215 (5th Cir. 1988).

After locating Goodson in front of 3996 Estates Place, Meade parked his vehicle and put on his tactical gear identifying himself as both "U.S. Marshal" as well as being part of the "U.S. Marshal's Fugitive Task Force." Meade observed Goodson maneuver behind the southwest corner of the house in what Meade believed was an effort to evade. Meade then pursued Goodson and yelled "U.S. Marshals" and "It's the police." At that time, Meade was both clearly announcing his authority as a "U.S. Marshal" and demonstrating his SOFAST membership.

Not only are the State's arguments that Meade was not a federal officer, and his actions weren't taken under the color of his office not supported by the facts of this case, but they're also contrary to the applicable statute governing United States Marshal authority as well as the jurisprudence that has developed. Instead, the statute and cases show Meade's actions were undertaken as a federal officer and his conduct occurred under the color of his office.

As a Special Deputy United States Marshal, Meade was authorized to pursue and arrest Casey Goodson for the violations of Ohio law observed on December 4, 2020. The operative

4

statute sanctioning Meade's actions is 28 U.S.C § 564.  That provision provides as follows:

> United States marshals, deputy marshals and such other officials of the Service as may be designated by the Director, in executing the laws of the United States within a State, **may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof**. (Emphasis supplied).

To properly apply this unambiguous federal statute in Ohio, it is necessary to understand the broad scope of authority given to sheriffs.  This grant is a creature of the Ohio Revised Code.  Under R.C. 311.07, sheriffs in Ohio "shall preserve the public peace…"  To this end, a sheriff in Ohio:

> [I]s the first man within the county, and it is incident to his office that he apprehend and commit to prison all persons who break or attempt to break the peace.  He is bound, *ex officio*, to pursue and take all traitors, murderers, felons, and rioters.

*United States v. Laub Baking Co.et al.*, 283 F. Supp. 217, 220 (N.D. OH 1968).

In *Laub*, the defendants were charged with federal misdemeanors and challenged the authority of the USMS to fingerprint them.  In his lengthy opinion, Judge Lambros found that under Ohio law, a county sheriff was clearly imbued with the authority to fingerprint the defendants.  As a result, Judge Lambros concluded 28 U.S.C. § 570 authorized the USMS to step into sheriff's shoes and exercise the same authority.

At the time *Laub* was decided, § 570 provided that "A United States marshal and his deputies, in executing the laws of the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof." This statutory provision was repealed on November 18, 1988 (Pub. L. 100-690) but this same authority was relocated to § 564, upon which Meade relies and has cited above.

In short, Judge Lambros found that because sheriffs had the power to fingerprint the defendants under Ohio law, § 570 conferred this same authority to United States Marshals

5

performing their duties in Ohio. *Id*. at 221.

As noted, the Ohio Revised Code both authorizes and mandates sheriffs to keep the peace. This broad grant of power includes the authority to investigate and arrest felons. Because sheriffs have this express authority, § 564 instills Special Deputy United States Marshals with the same authority. When Meade and all other state and county law enforcement officers assigned to SOFAST were attempting to arrest Kendale Barbour, they were acting under federal authority and in their capacities as deputized Special Deputy United States Marshals. While Meade was traveling back to SOFAST headquarters in his USMS vehicle at the direction of Deputy Youngless, he was using his vehicle for "official purposes" and "solely for use in the performance of the task force." As such, Meade was still a federal officer when he saw Goodson violating Ohio law.

While he was traveling as a deputized Special Deputy United States Marshal, § 564 gave Meade the same authority as the sheriff to both investigate and arrest anyone committing a felony in violation of Ohio law. Based on his observations, Meade had reason to believe Goodson violated the aggravated menacing and improper handling of a firearm in a motor vehicle statutes. Consequently, Meade was authorized by § 564 to both investigate and arrest Goodson.

The Supreme Court in *Cunningham v. Neagle*, 135 U.S. 1 (1890) held that officers act within their federal authority so long as they act according to "any obligation fairly and properly inferable from that instrument [the Constitution] or any duty of the marshal to be derived from the general scope of his duties **under the laws of the United States.**" (Emphasis supplied). *Id*. at 59. In sum, Meade's authority wasn't limited to simply locate and arrest fugitives by an Executive Branch MOU, as the State of Ohio maintains in its motion for summary remand. Instead, the relevant statute gave Meade and the other deputized members of SOFAST far broader authority.

6

Not only does § 564 and the facts of this case show Meade was acting as a federal officer and under color of law, but so does the jurisprudence that has developed. There are several cases to review and collectively, they stand for the proposition that when either a Special Deputy United States Marshal or Deputy United States Marshal is on duty and witnesses the commission of a state crime, he performs his "official duty" by effectuating the arrest of the law breaker.

The first case to consider is *United States v. Jenkins*, 67 F.3d 297, 1995 WL 579308 (TABLE) (4th Cir. 1995). While at a Burger King, Jenkins stole a cell phone from a customer who was eating inside the restaurant. *Id*. at *1. Deputy United States Marshal Jones witnessed the theft and Jenkins flight from the restaurant. Consequently, Deputy Jones gave pursuit in his unmarked SUV. *Id*. However, during the chase, Jenkins's passenger fired several shots at Deputy Jones. *Id*.

Jenkins and his passenger were charged with assault on a federal officer. At his trial, Jenkins's defense was Deputy Jones was not performing his official duties in attempting to arrest him for the state theft offense. Jenkins was convicted and he appealed.

The Fourth Circuit acknowledged that under 28 U.S.C. § 566(d), the powers of Deputy Marshals are constrained and, in that section, "include the power to make arrests without warrant for federal felonies." *Id*. at *1. However, the panel also recognized that under § 564, "while executing federal laws within a state, a marshal may exercise the same powers which a state sheriff may exercise in the execution of state laws." *Id*.

The court found a federal officer was engaged in the performance of his official duties when he was "acting within the scope of what the agent is employed to do" and not "engaging in a personal frolic." *Id* at *2. The Fourth Circuit surveyed the applicable law and ruled that:

> [C]ourts have consistently found that federal agents were acting in the performance of official duties when they have intervened as law

7

>enforcement officers in situations which involved criminal behavior which is not a federal felony. *See United States v. Kelley,* 850 F.2d 212, 214–15 (5th Cir.), *cert. denied,* 488 U.S. 911 (1988) (Secret Service agent assaulted while taking temporary charge at accident scene); *United States v. Lopez,* 710 F.2d 1071, 1073–75 (5th Cir.1983) (Customs officer assaulted while detaining state fugitive); *United States v. Reid,* 517 F.2d 953, 958–64 (2d Cir.1975) (DEA agent shot attempting to stop robbery).

*Jenkins*, 67 F.3d 297 at *2.

The Fourth Circuit upheld Jenkins's conviction because, based on the evidence, a jury could find Deputy Jones was acting in performance of his official duties when he pursued a thief who committed the theft offense in his presence. *Id*. In arriving at this judgment, the panel found the value of the stolen item and whether the offense was a state or federal crime weren't deciding factors. *Id*. Consequently, under *Jenkins*'s rationale, the State of Ohio's reference that Meade only observed a violation of Ohio law is unimportant.

Next, Meade relies on *United States v Colbert*, 70 F.3d 1263, 1995 WL 703546 (TABLE) (4th Cir. 1995). In *Colbert*, two Special Deputy United States Marshals, holding the same designation as Meade, were assigned to a fugitive task force in Maryland. On the day in question, they were attempting to locate a fugitive who had an active warrant when they observed Colbert walking in a peculiar manner along a road with a large bulge on his left side. *Id*. at *1. The Special Deputy Marshals believed Colbert was armed so they identified themselves, he fled, and they pursued. During this pursuit, Colbert shot at the Special Deputy Marshals. *Id*.

Colbert was charged with assault on a federal officer and as a defense, he argued the Special Deputy Marshals' investigation and stop had no relationship to their assigned duties of arresting the fugitive. *Id*. Consequently, according to Colbert, the Special Deputy Marshals were acting outside the scope of their official duties and were tantamount to state officers initiating their own

8

investigation. *Id.* In sum, these are the same arguments advanced by the State of Ohio in Meade's case.

The Fourth Circuit rejected Colbert's argument and held that:

> [T]he Deputies observed Colbert walking down a busy, public street with a loaded shotgun under his clothing. **If they had not stopped and investigated, they "might reasonably have been regarded as *not* doing 'what [an] officer ought to do because of being an officer.'"** *Kelley,* 850 F.2d at 215 (citations omitted) (emphasis in original). When they were assaulted, the Deputies were surveilling the area as federal officers and following the orders of a federal supervisor. **They did not lose their status as federal officers when they observed and investigated possible criminal conduct committed in their presence.**

*Colbert*, 70 F.3d 1263 at *1. (Emphasis supplied).

The final case to consider is *United States v. Hoy*, 137 F.3d 726 (2d Cir. 1998). In *Hoy*, Deputy United States Marshal Schlagel was detailed to Manhattan as part of a security team at a high-profile trial. Late at night, Deputy Schlagel ventured to a corner market to buy food and while enroute, he heard a woman screaming for help. Deputy Schlagel found her lying on the sidewalk with Hoy standing over her holding her purse.

Hoy left the area with the purse and Deputy Schlagel identified himself to the woman and offered to help. The woman told Deputy Schlagel she was Hoy's estranged wife, he was drunk, they'd been to dinner, and when she refused to return to his apartment, he knocked her down and took her purse. Shortly thereafter, Hoy returned and both confronted and assaulted Deputy Schlagel. For this, Hoy was charged with assaulting a federal officer.

What follows is Deputy Schlagel's testimony at Hoy's trial about the role of a Deputy United States Marshal in state law enforcement:

> ... as Deputy U.S. Marshals, we did have the ability to become involved in incidents that we observed, that we witnessed on the street when we were on duty or off duty. [The Marshals Service] discouraged us from getting involved in minor things such as traffic

9

> offenses. They didn't want us chasing down speeders ... but they said if we saw somebody who was being harmed or being injured, a citizen, that we were, as Deputy U.S. Marshals, able to step in and prevent that from happening.

*Id*. at 728.

Like attempted in *Jenkins* and *Colbert*, Hoy's defense at trial was Deputy Schlagel wasn't performing an official duty when he was assaulted. The jury convicted Hoy and on appeal, he challenged the sufficiency of the evidence supporting this element.

The Second Circuit affirmed and adopted the test the Fourth Circuit adopted in *Jenkins*. The *Hoy* panel found the proper inquiry into whether a federal agent was engaged in the performance of his official duties is "whether the federal agent [was] 'simply acting within the scope of what the agent is employed to do. The test is whether the agent [was] acting within that compass or [was] engaging in a personal frolic of [his or her] own." *Id*. The court credited the testimony of Deputy Schlagel and found he was performing his official duty when he came to the woman's assistance. *Id*. at 730.

**(C) Conclusion.**

When Michael Jason Meade witnessed Casey Goodson violating Ohio law, he was acting as a federal officer and under the color of his office as a deputized Special Deputy United States Marshal. Both § 564 and the applicable jurisprudence show Meade had the authority to step into the sheriff's shoes, investigate, and even arrest Goodson for the crimes he observed. Consequently, by pursuing Goodson, Meade wasn't on a personal frolic; instead, he was acting within the scope of what he was employed to do. It is unimportant that Meade observed a violation of state law. Finally, given the facts of this case, Meade was still a federal officer when Goodson's crimes were observed.

10

This Court is respectfully requested to deny the State of Ohio's motion for summary remand.

Respectfully submitted,

/s/ Mark C. Collins

Mark C. Collins (0061207)
Mark Collins Co., LPA
150 E. Mound Street, Suite 308
Columbus, OH 43215
(614) 443-3100
mark@markcollinslaw.com

/s/ Kaitlyn C. Stephens

Kaitlyn C. Stephens (0095589)
Mark Collins Co., LPA
150 E. Mound Street, Suite 308
Columbus, OH 43215
(614) 443-3100
kaitlyn@mcollinslaw.com

/s/ Steven S. Nolder

Steven S. Nolder (0037795)
65 East State Street, Suite 200
Columbus, Ohio 43215
(614) 221-9790
snolder9@gmail.com
Attorneys for Michael Jason Meade

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, I filed the foregoing response in opposition on the ECF electronic filing system and thereby served all counsel of record.

/s/ Steven S. Nolder
Steven S. Nolder (0037795)
Attorney for Michael Jason Meade